# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>LAKEWOOD ENGINEERING AND MFG CO., INC.,<br><br>Debtor. | Case No. 09-5320<br><br>Chapter 7<br><br>Hon. Pamela S. Hollis |
| GREGG SZILAGYI, not individually, but as Trustee of Lakewood Engineering and Mfg. Co., Inc., and SUNBEAM PRODUCTS, INC. d/b/a JARDEN CONSUMER SOLUTIONS,<br><br>Plaintiffs,<br><br>v.<br><br>CHICAGO AMERICAN MANUFACTURING, LLC, SCOTT JACKSON AND CHUNGKIN YEE,<br><br>Defendants. | Adv. Pro. No. 09-00341 |

## ANSWER AND AFFIRMATIVE DEFENSES OF CHICAGO AMERICAN MANUFACTURING LLC TO AMENDED ADVERSARY COMPLAINT

Chicago American Manufacturing, LLC ("CAM"), for its Answer and Affirmative Defenses to the Amended Adversary Complaint ("Complaint") filed by Gregg Szilagyi, not individually, but as chapter 7 trustee ("Trustee") of the estate of Lakewood Engineering & Mfg. Co., Inc. ("Debtor"), and Sunbeam Products, Inc. d/b/a Jarden Consumer Solutions ("Jarden," and together with the Trustee, "Plaintiffs"), states as follows:

### PARTIES

1.      Gregg Szilagyi is the duly appointed chapter 7 Trustee of Lakewood Engineering & Mfg. Co., Inc.

**ANSWER**:     Admitted.

2.      Sunbeam Products, Inc. d/b/a Jarden Consumer Solutions is a Delaware corporation with its principal offices located in Boca Raton, Florida. Jarden is the purchaser of certain of Lakewood's assets, including the trademarks and property at issue in this adversary proceeding, pursuant to a sale conducted by the Trustee and approved by this Court under 11 U.S.C. § 63 [sic].

**ANSWER**:    Admitted on information and belief.

3.      Lakewood Engineering & Mfg. Co., Inc. is an Illinois corporation with its principal place of business in Chicago, Illinois and is the debtor in this chapter 7 case.

**ANSWER**:    Admitted.

4.      Defendant Chicago American Manufacturing, LLC is an Illinois limited liability company with offices located at 4500 West 47th Street, Chicago, Illinois 60632.

**ANSWER**:    Admitted.

5.      Defendant Scott Jackson is an individual believed to be residing at 3832 Grassmere Road, Naperville, Illinois 60564.

**ANSWER**:    Admitted on information and belief.

6.      Defendant Chungkin Yee is an individual believed to be residing at 1389 Danada Court, Naperville, Illinois 60563.

**ANSWER**:    Admitted on information and belief.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O). Venue of this proceeding in the United States Bankruptcy Court for the Northern District of Illinois is proper under 28 U.S.C. § 1409.

**ANSWER**:    CAM does not contest the jurisdiction and venue allegations in

Paragraph 7 with respect to Counts I-III and XVI-XVII, but denies that this Court has

jurisdiction over Counts IV-XV. CAM further answers that it reserves its right to move to

withdraw, in whole or part, the captioned adversary proceeding pursuant to 28 U.S.C. § 157(d)

and any other applicable law or rule of procedure.

8.      Plaintiffs bring this action in connection with Defendants' violation of the automatic stay and conversion of Lakewood's property, and CAM's wrongful manufacture and

sale of certain 20" box fans, also referred to as Lakewood 101NS fans (the "Lakewood Box Fans"), for: (i) a declaration, pursuant to 28 U.S.C. § 2201, that the Supply Agreement does not contain essential price terms necessary for the formation of an enforceable contract; (ii) a declaration, pursuant to 28 U.S.C. § 2201, that CAM has no valid lien against the Equipment (as defined below); (iii) conversion; (iv) – (vi) infringement of issued U.S. patents in violation of 35 U.S.C. § 273; (vii) infringement of registered trademarks and production of counterfeit goods in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (viii) federal unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125; (ix) unfair competition and trademark infringement in violation of Consumer Fraud And Deceptive Business Practices Act, 815 ILCS 6505; (xi) unfair competition and trademark infringement in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*; (xii) unjust enrichment; (xiii) tortious interference with a contract; (xiv) unauthorized access of a protected computer causing damage in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (xv) civil conspiracy; (xvi) disallowance of any claims asserted by CAM against Lakewood's estate pursuant to U.S.C. § 502; and (xvii) equitable subordination pursuant to 11 U.S.C. § 510(c).

**ANSWER**:   Paragraph 8 of the Complaint is a statement of the Plaintiffs' legal claim and therefore does not require an answer.  To the extent that an answer is required, CAM denies the allegations in Paragraph 8 of the Complaint.

## FACTS

9.   On February 19, 2009 (the "Petition Date"), International Paper Company, Inc., Thynk Design, Inc. , Selco Products Company and The Stonegate Group, Ltd. (collectively, the "Petitioning Creditors") filed an involuntary petition against Lakewood for relief under Chapter 7 of the Bankruptcy Code.

**ANSWER**:   Admitted.

10.   On March 10, 2009, an Order for Relief was entered by the Court, and the Trustee was appointed to serve as the chapter 7 trustee for Lakewood's bankruptcy estate (the "Estate").

**ANSWER**:   Admitted.

11.   Prior to the Petition Date, Lakewood was a manufacturer of electric housewares and fans, including the Lakewood Box Fans for sale to big box retail businesses.  Upon information and belief, Lakewood's annual sales were as high as $80 million.

**ANSWER**:   CAM admits that Lakewood manufactured and sold Lakewood box fans to various retailers.  CAM denies the remaining allegations of Paragraph 11 of the Complaint.

12.   Upon information and belief, CAM entered into a certain Supply Agreement with Debtor, a copy of which is attached hereto as Exhibit A (the "Supply Agreement"), with full knowledge of Debtor's weak financial condition.  The terms of the Supply Agreement reflect

CAM's attempt to circumvent standard bankruptcy procedures designed to protest all creditors and prevent overreaching and disproportionate recovery by individual creditors. Under the terms of the Supply Agreement, CAM attempted to take ownership of Lakewood Box Fans that the Debtor failed to pay for within 30 days of the end of the month in which such Lakewood Box Fans were manufactured by CAM under a "limited license" in the Supply Agreement.

**ANSWER**:   CAM admits that it entered into a Supply Agreement with the Debtor on December 17, 2008 and that pursuant to the Supply Agreement CAM was granted certain rights to make and sell box fans. CAM admits that, in accordance with rights granted to it under the Supply Agreement, that it has manufactured and sold box fans and that, as permitted by the Supply Agreement, CAM has used certain trademarks of the Debtor. CAM denies the remaining allegations of Paragraph 12 of the Complaint.

13.     In connection with its production and sale of Lakewood Box Fans, Lakewood used trademarks, which marks consist of the word "LAKEWOOD" and, in addition, the word "LAKEWOOD" within a rectangle with fanciful waves on top of the rectangle (collectively, the "Lakewood Marks").

**ANSWER**:   CAM admits that Lakewood used certain marks and trademarks in the manufacture and sale of its fans. CAM denies the remaining allegations in Paragraph 13 of the Complaint.

14.     Prior to the Trustee's sale of Lakewood's interest in the Lakewood Marks to Jarden, as described below, Lakewood was the United States owner of the Lakewood Marks.

**ANSWER**:   Paragraph 14 sets forth legal conclusion to which no response is required. To the extent that Paragraph 14 alleges facts, CAM denies the allegations in Paragraph 14 of the Complaint.

15.     The term LAKEWOOD is registered, as Registration Numbers 949,246 and 1,558,917, on the Principal Register of the United States Patent and Trademark Office (the "USPTO") in connection with portable electronic fans for domestic use and portable space heaters, respectively (collectively, the "Lakewood Registrations"). (Copies of the registration materials for the Lakewood registrations from the USPTO website are attached hereto as Exhibit B.)

**ANSWER**:    Paragraph 15 of the Complaint sets forth legal conclusions to which no response is required and, to the extent that they allege facts, the allegations are denied.

16.    Lakewood has spent substantial time, effort and money advertising and promoting the Lakewood Marks throughout the United States, and these marks have consequently developed significant goodwill, have become distinctive and have acquired secondary meaning.

**ANSWER**:    Paragraph 16 of the Complaint sets forth legal conclusions to which no response is required.  To the extent that Paragraph 16 alleges facts, CAM is without a basis to admit or deny the truth of the allegations in Paragraph 16 of the Complaint and therefore denies the allegations.

17.    On or about November 3, 1998, Untied states Patent No. 5,829,956 (the "'956 Patent"), entitled FAN BLADE ASSEMBLY was duly and legally issued to Yung Chen and Manual Almanza, a true and correct copy of which is attached hereto as Exhibit C.  The '956 patent was assigned to Lakewood Engineering and Manufacturing Co. and subsequently sold to Plaintiff Jarden.

**ANSWER**:    Paragraph 17 of the Complaint sets forth legal conclusions to which no response is required and, to the extent that they allege facts, the allegations are denied.

18.    The '956 Patent is valid and enforceable.

**ANSWER**:    Paragraph 18 of the Complaint sets forth legal conclusions to which no response is required and, to the extent that they allege facts, the allegations are denied.

19.    On or about July 20, 2004, United States Patent No. 6,763,564 (the "'564 Patent", entitled AUTOMATED METHOD AND APPARATUS FOR DRIVING FASTENERS INTO AN ELECTRIC FAN ASSEMBLY was duly and legally issued to Lakewood Engineering and Manufacturing Co., a true and correct copy of which is attached hereto as Exhibit D.  The '564 Patent was subsequently sold to Plaintiff Jarden.

**ANSWER**:    Paragraph 19 of the Complaint sets forth legal conclusions to which no response is required and, to the extent that they allege facts, the allegations are denied.

20.    The '564 Patent is valid and enforceable.

**ANSWER**:    Paragraph 20 of the Complaint sets forth legal conclusions to which no response is required and, to the extent that they allege facts, the allegations are denied.

21.    On or about May 1, 2001, United States Patent No. D441,443 (the "'D'443 Patent", entitled HOUSING FOR A BOX FAN was duly and legally issued to Lakewood Engineering and Manufacturing Co., a true and correct copy of which is attached hereto as Exhibit E.  The 'D'443 Patent was subsequently sold to Plaintiff Jarden.

**ANSWER**:    Paragraph 21 of the Complaint sets forth legal conclusions to which no response is required and, to the extent that they allege facts, the allegations are denied.

22.    The D'443 Patent is valid and enforceable.

**ANSWER**:    Paragraph 22 of the Complaint sets forth legal conclusions to which no response is required and, to the extent that they allege facts, the allegations are denied.

**The Supply Agreement**

23.    Prior to the Petition Date, in the fall of 2008, Lakewood was experiencing financial difficulty.

**ANSWER**:    CAM is without a basis to admit or deny the allegations in Paragraph 23 and therefore denies the allegations.

24.    CAM understood at that time Lakewood lacked the necessary working capital to manufacture fans for the upcoming marketing season, and that it would be advantageous for Lakewood to enter into an arrangement with a supplier whereby the supplier would assume a portion of the cost of manufacturing fans for Lakewood.

**ANSWER**:    CAM admits that it had been informed in the Fall of 2008 that Lakewood had financial difficulties.

25.    On December 17, 2008, Lakewood and CAM entered into the Supply Agreement. The term of the Supply Agreement is December 17, 2008 through December 16, 2009.  Supply Agreement, §D.1.

**ANSWER**:    CAM admits that it entered into the Supply Agreement with Lakewood on or about December 17, 2008 and that the Supply Agreement provides for a one-year term.  CAM denies the remaining allegations in Paragraph 25 of the Complaint.

26.    Pursuant to the Supply Agreement, CAM agreed to manufacture Lakewood Box Fans in sufficient quantity to meet Lakewood's marketing needs through August, 2009.  Supply Agreement, §A.1.  So long as CAM was not in default of the Supply Agreement, Lakewood

agreed to purchase all of its Lakewood Box Fans from CAM, up to the following forecasted amounts set forth in Exhibit A to the Supply Agreement (the "<u>Forecasted Products</u>"):

| | |
|---|---|
| December, 2008 | 20,280 |
| January 2008 [sic] | 24,440 |
| February 2008 [sic] | 119,600 |
| March [sic] | 100,360 |
| April [sic] | 230,880 |
| May [sic] | 372,320 |
| June [sic] | 239,800 |
| July [sic] | 74,880 |
| August [sic] | 42,640 |

Supply Agreement, §A.1 and Exhibit A of the Supply Agreement.

**ANSWER**:    CAM admits that the Supply Agreement provides that CAM agreed to manufacture, sell, and ship Product (as defined in the Supply Agreement) to Lakewood or Lakewood's customer in accordance with the Supply Agreement and future purchase orders and that Lakewood agreed to order all of its actual requirements up to the amounts set forth in the forecast attached as Exhibit A to the Supply Agreement from CAM and no other supplier or source.  CAM denies the remaining allegations of Paragraph 26 of the Complaint.

27.    The Supply Agreement is silent as to the price at which CAM agreed to sell any of the Lakewood Box Fans to Lakewood.

**ANSWER**:    CAM admits that the Supply Agreement is silent as to the price at which CAM agreed to sell Lakewood fans to Lakewood, but denies that there is not an enforceable contract as between CAM and Lakewood.

28.    CAM was allowed to manufacture Lakewood Box Fans in advance of receiving purchase orders from Lakewood for the sole purpose of building up an inventory to satisfy Lakewood's requirements for the Forecasted Products.  Supply Agreement, §§B.3 and C.2.

**ANSWER**:   CAM admits that the Supply Agreement provides that CAM may elect, in its sole discretion, to use Lakewood Equipment (as defined in the Supply Agreement) to manufacture 20" box fans in advance and prior to receiving purchase orders from Lakewood so as to build up an inventory to satisfy Lakewood's requirements under the Supply Agreement. CAM denies the remaining allegations in Paragraph 28 of the Complaint.

29.   In the event that Lakewood failed to purchase the Forecasted Products from CAM within 30 days after the end of each month listed in Exhibit A to the Supply Agreement, Lakewood agreed that CAM could sell such Forecasted Products to parties other than Lakewood. Supply Agreement, §C.3.  The Supply Agreement provides that CAM was granted a limited license for such purpose, which license was set to expire upon CAM's sale of all such remaining Forecasted Products.  Supply Agreement, §C.3

**ANSWER**:   CAM answers that Lakewood granted CAM a license to sell to any third party any and all fans manufactured by CAM, in Lakewood packaging and under Lakewood's name, which are not purchased by Lakewood, up to the amount of the product forecasts appended to the Supply Agreement.  CAM further answers that such license expires only after all such fans have been sold by CAM.  CAM denies the remaining allegations of Paragraph 29 of the Complaint.

30.   Lakewood agreed to supply CAM with all of the motors and cord sets needed to manufacture the Lakewood Box Fans at no cost to CAM.  Supply Agreement, §A.2.

**ANSWER**:   CAM admits that the Supply Agreement provides for the language paraphrased in Paragraph 30, but denies any allegation that Lakewood had satisfied its obligations under the Supply Agreement.

**The Trustee's Rejection of the Supply Agreement**

31.   On March 27, 2009, the Trustee filed a motion to reject the Supply Agreement. On April 2, 2009, this Court entered an order (the "Rejection Order") granting the Trustee's motion and approving the rejection of the Supply Agreement as of March 27, 2009 (the "Rejection Date").

**ANSWER**:   Admitted, except that CAM refers to the actual language of the Rejection Order.

32.   Prior to the Rejection Date, CAM had not sold any Lakewood Box Fans to third parties.

**ANSWER**:   CAM answers that as of March 31, 2009, CAM had sold approximately 1,260 Lakewood box fans to customers other than Lakewood under the Supply Agreement.

33.   After the Rejection Date, despite the fact that Lakewood had not further requirements under the Supply Agreement, CAM continued to manufacture, offer for sale, sell and market Lakewood Box Fans in violation of U.S. Patent Nos. 5,829,956, 6,763,564 and D441,443 (the "Patents"), with the intention of becoming a vendor of record for big box retailers, including Albertsons, Sears and Menards.

**ANSWER**:   CAM denies the allegations in Paragraph 33 of the Complaint.

34.   From and after the Rejection Date, CAM has consistently used, and currently uses, the Lakewood Marks in CAM's manufacture and marketing of the Lakewood Box Fans.

**ANSWER**:   CAM admits that it has retained rights under the licenses granted under the Supply Agreement and that pursuant to such licenses it has used marks of Lakewood licensed under the Supply Agreement.   CAM denies the remaining allegations in Paragraph 34 of the Complaint.

35.   As of April 9, 2009, CAM displayed Lakewood Box Fans bearing the Lakewood Marks in its facility located at 4500 West 47th Street, Chicago, Illinois 60632.

**ANSWER**:   CAM admits that it had in its facility as of April 9, 2009 box fans bearing the Lakewood marks.   CAM denies the remaining allegations in Paragraph 35 of the Complaint.

36.   After the Rejection Date, CAM negotiated purchase orders for the sale of Lakewood Box Fans bearing the Lakewood Marks to various big-box retail businesses, including Wal-mart, Menards, Home Depot, SuperValu, Dollar General and Sears.

**ANSWER**:   CAM admits that, subsequent to the Rejection Date, it has sold Lakewood box fans under the licenses granted under the Supply Agreement.   CAM denies the remaining allegations in Paragraph 36 of the Complaint.

37.    CAM has taken the position that rejection of the Supply Agreement did not affect CAM's possessory or other rights under the Supply Agreement.  In addition, CAM advised the Trustee that it would continue using the Lakewood Marks to produce and sell Lakewood Box Fans despite the Rejection Order.

**ANSWER**:    CAM admits that the rejection of the Supply Agreement did not terminate license rights granted to CAM under the Supply Agreement and that CAM has the right to enforce and use such rights in accordance with the Supply Agreement.  CAM denies the remaining allegations in Paragraph 37 of the Complaint.

38.    As of the Rejection Date, CAM had manufactured approximately 397,000 Lakewood Box Fans, of which 65,720 had been purchased by Lakewood.

**ANSWER**:    CAM admits that between December 1, 2008 and March 31, 2009, CAM had manufactured 260,560 Lakewood box fans, of which 19,400 were transferred to Lakewood in sale or barter transactions.  CAM denies the allegations in Paragraph 38 of the Complaint.

39.    As of the Rejection date, CAM had sold approximately 1,260 Lakewood Box Fans to third parties.

**ANSWER**:    CAM admits that as of March 31, 2009, CAM had sold approximately 1,260 Lakewood box fans to customers other than Lakewood under the Supply Agreement.

40.    On information and belief, since the Rejection Date, CAM has manufactured in excess of 100,000 Lakewood Box Fans, and has sold in excess of 145,000 Lakewood Box Fans to at least a dozen retailers, including Albertsons, Sears and Manards in violation of the Patents.

**ANSWER**:    CAM denies the allegations in Paragraph 40 of the Complaint.

41.    On information and belief, as of June 5, 2009, CAM had an inventory of 276,179 Lakewood Box Fans.

**ANSWER**:    Admitted.

**The Adversary**

42.    On April 20, 2009, the Trustee and Wells Fargo Foothill, Inc. ("Wells Fargo"), Lakewood's secured lender, commenced this adversary proceeding (the "Adversary"), stating several claims against CAM, including claims for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. §1114(1) and unfair competition under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 and the common law of the State of Illinois.

**ANSWER**:      Admitted.

43.      Concurrently with the commencement of the Adversary, the Trustee filed an Emergency Motion for Temporary Restraining Order and Order Granting Preliminary Injunction Hearing (the "TRO Motion"), seeking a temporary restraining order and preliminary injunction prohibiting CAM from continuing to market the Lakewood Box Fans.

**ANSWER**:      Admitted.

44.      This Court denied the TRO Motion and set the matter for hearing on the Trustee's request for a preliminary injunction (the "PI Hearing").

**ANSWER**:      Admitted.

**The Sale**

45.      On May 4, 2009, prior to the PI Hearing, the Trustee filed a motion pursuant to 11 U.S.C. §363 for authorization to sell certain of Lakewood's assets (the "Acquired Assets"), including the trademarks, patents, proprietary rights and other goods at issue in this Adversary, to CAM, subject to higher and better offers.

**ANSWER**:      Admitted.

46.      Jarden ultimately was the winning bidder for the Acquired Assets.  On May 28, 2009, this Court entered its Order Approving Sale of Property of the Estate (the "Sale Order"), which approved the sale of the Acquired Assets to Jarden pursuant to the Asset Purchase Agreement between the Trustee and Jarden ("APA").  The sale of the Acquired Assets to Jarden (the "Sale") closed on June 8, 2009 (the "Closing").

**ANSWER**:      Admitted.

47.      The Acquired Assets include all of the Estate's right, title and interest in all of Lakewood's assets (excluding certain assets not relevant to this adversary proceeding), free and clear of any and all liens, claims and encumbrances, wherever situated, including all of Lakewood's machinery and equipment in CAM's possession.

**ANSWER**:      Admitted, except that CAM refers to the actual language of the APA and Sale Order.

48.      Pursuant to Sale Order, this Court approved the Sale free and clear of any and all liens, claims, and encumbrances of any kind or nature whatsoever.

**ANSWER**:      Admitted, except that CAM refers to the actual language of the Sale Order.

49.     Pursuant to the APA, the Trustee transferred to Jarden, among other things, all of his claims and causes of action against CAM set forth in this Adversary. The APA states in relevant part:

> In connection with the purchase and sale of the Acquired Assets described in §2(a) of this Agreement, Seller specifically transfers and assigns to Buyer legal title and all Claims and cases of action (including Claims and casus of action for infringement) relating to any of the Proprietary Rights, wither such Claims and causes of action arose or accrued prior to or after the Closing Date, whether known or unknown, at law or in equity, including, without limitation, all Claims and cases of action asserted in the [Adversary], or which could have been asserted in the [Adversary].

APA, §2(b).

**ANSWER**:     CAM admits that the APA includes the stated language.  CAM denies the remaining allegations in Paragraph 49 of the Complaint.

50.     In connection with Jarden's acquisition of the claims against CAM set forth in the Adversary, Jarden agreed that any monetary recoveries in the Adversary would be allocated as follows: first, in payment of Jarden's reasonable attorneys' fees and costs in connection with the prosecution of the Adversary; second, twenty-five percent of the remaining net monetary recoveries to the Trustee for the benefit of Lakewood's bankruptcy estate; and third, the remaining seventy-five percent of the net monetary recoveries to be retained by Jarden. APA, §2(b)

**ANSWER**:     CAM admits that the APA contains the provisions paraphrased in Paragraph 50 of the Complaint.  CAM denies the remaining allegations in Paragraph 50 of the Complaint.

51.     After the Sale, Wells Fargo was voluntarily dismissed and Jarden intervened as a plaintiff in the Adversary.

**ANSWER**:     CAM admits that on June 24, 2009, the Court entered an order dismissing Wells Fargo from the captioned adversary proceeding and authorizing Wells Fargo to withdraw its Count IV thereof on and an order authorizing Jarden to intervene as a party-plaintiff in.  CAM denies the remaining allegations of Paragraph 51 of the Complaint.

52.     Subsequently, the TRO Motion was withdrawn and Jarden was granted leave to file this amended complaint on or before August 7, 2009.

**ANSWER**:    Admitted.

**Disappearance of Certain Acquired Assets**

53.    After the Closing, Jarden discovered that certain property which was specifically included in the Sale was missing or had been copied and the copies taken from Lakewood's offices (the "Missing Property").

**ANSWER**:    CAM is without a basis to admit or deny the truth of the allegations in Paragraph 53 of the Complaint and therefore denies the allegations.

54.    The Missing Property includes:

- All or substantially all paper files and a laptop computer that were utilized by Jackson, Lakewood's former Vice President of Sales and Marketing;

- All or substantially all paper files and a laptop computer that were utilized by Yee, Lakewood's former Vice President of Engineering and Global Sourcing;

- All or substantially all domestic customer paper files; and

- All or substantially all electronic packaging files and product images.

**ANSWER**:    CAM is without a basis to admit or deny the truth of the allegations in Paragraph 54 of the Complaint and therefore denies the allegations.

55.    On information and belief, Jackson and Yee unlawfully duplicated engineering drawings and other documents belonging to Lakewood (collectively, the "Duplicated Documents") and removed such documents from Lakewood.

**ANSWER**:    CAM is without a basis to admit or deny the truth of the allegations in Paragraph 55 of the Complaint and therefore denies the allegations.

56.    On information and belief, Jackson and Yee are now employed by CAM.

**ANSWER**:    CAM admits that Jackson and Yee are currently employed by CAM. CAM denies the remaining allegations in Paragraph 56 of the Complaint.

57.    On information and belief, CAM has used and is using the Missing Documents and the Duplicated Documents in the operation of its business.

**ANSWER**:    CAM denies the allegations in Paragraph 57 of the Complaint.

### The CAM Claim

58.    On May 20, 2009, CAM filed a proof of claim in Lakewood's bankruptcy case, which claim is docketed on the Lakewood Claims Register as Claim No. 27 (the "CAM Claim"). (A copy of the CAM Claim is attached hereto as Exhibit F.)

**ANSWER**:    Admitted.

59.    In the CAM Claim, CAM asserts a claim against the Estate, pursuant to the Supply Agreement, in an amount not less than $3,023,474.00, consisting of an unsecured claim in an amount not less than $1,829,674.00 and a secured claim in an amount not less than $1,193,800.00.  Addendum to CAM Claim, p.1.

**ANSWER**:    Admitted, except that CAM refers to actual language of the Claim.

60.    CAM asserts that the CAM Claim is secured by the Equipment as defined in the Supply Agreement.

**ANSWER**:    CAM admits that it asserts a secured claim against the Lakewood estate.

Specifically, CAM holds a tool and die lien pursuant to the Illinois Tool and Die Lien Act, 770

ILL. COMP. STAT. 105/1, and a common law artisan lien for costs related to repairs and

improvements to the Equipment.  CAM denies the remaining allegations in Paragraph 60 of the

Complaint.

### COUNT I
### Declaratory Judgment as to the Validity of
### the Supply Agreement – 28 U.S.C. § 2201
### (CAM)

61.    Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:    CAM restates its answers to Paragraphs 1 through 60 of the Complaint.

62.    Because of the absence of price terms in the Supply Agreement, the Court cannot ascertain what the parties have agreed to and the Supply Agreement is unenforceable as a matter of law.

**ANSWER**:    CAM denies the allegations in Paragraph 62 of the Complaint.

63.    CAM takes the position that the Supply Agreement constitutes an enforceable contract.

**ANSWER**:    CAM admits that the Supply Agreement constitutes an enforceable contract.  CAM answers further that it has retained rights under the Supply Agreement and that such rights did not terminate upon rejection.

64.    An actual controversy exists between Jarden and the Trustee, on one hand, and CAM on the other hand as to whether the Supply Agreement constitutes an enforceable contract.

**ANSWER**:    CAM admits that the parties to the Complaint dispute certain facts and legal issues.

## COUNT II
### Declaratory Judgment as to the Validity of
### Liens Asserted by CAM Against the Equipment – 28 U.S.C. § 2201
### (CAM)

65.    Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:    CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

66.    CAM asserts that its claim set forth in the CAM Claim is secured by a lien in the Equipment pursuant to the Illinois Tool and Die Lien Act, and a common law artisan lien. Addendum to CAM Claim, p. 2.

**ANSWER**:    CAM admits that it asserts a secured claim against the Lakewood estate. Specifically, CAM holds a tool and die lien pursuant to the Illinois Tool and Die Lien Act, 770 ILL. COMP. STAT. 105/1, and a common law artisan lien for costs related to repairs and improvements to the Equipment.  CAM denies the remaining allegations in Paragraph 66 of the Complaint.

67.    The Equipment is part of the Acquired Assets that the Trustee sold to Jarden free and clear of any liens, claims and encumbrances.

**ANSWER**:    Paragraph 67 sets forth legal conclusions and therefore does not require an answer.  To the extent that it alleges facts, CAM denies the allegations.

68.    Pursuant to the Sale Order, any lien on the Acquired Assets attaches to the Sale proceeds rather than the Acquired Assets.

**ANSWER**:    Admitted, except that CAM refers to the actual language of the Sale Order.

69.    To the extent that CAM continues to assert a lien on the Equipment, as opposed to the Sale proceeds, an actual controversy exists between Jarden and the Trustee, on one hand, and CAM on the other hand as to whether CAM has a valid lien in the Equipment.

**ANSWER**:    Paragraph 69 sets forth legal conclusions and therefore does not require an answer. To the extent that it alleges facts, CAM denies the allegations

## COUNT III
### Conversion
### (CAM, Jackson and Yee)

70.    Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:    CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

71.    Jarden is the owner of the Missing Property.

**ANSWER**:    CAM is without a basis to admit or deny the truth of the allegations in Paragraph 71 and therefore denies the allegations.

72.    The Missing Property is essential to Jarden's operation of the Lakewood business that Jarden acquired through the Sale.

**ANSWER**:    CAM is without a basis to admit or deny the truth of the allegations in Paragraph 72 and therefore denies the allegations.

73.    Jarden has the right to the immediate possession of the Missing Property, which right is absolute, unconditional, and not dependent upon the performance of any act.

**ANSWER**:    CAM is without a basis to admit or deny the truth of the allegations in Paragraph 73 and therefore denies the allegations.

74.    On information and belief, CAM, Jackson and Yee have deprived Jarden of Jarden's right to immediate possession of the Missing Property by their unauthorized and wrongful assumption of control, dominion, or ownership of such property.

**ANSWER**:    CAM denies the allegations in Paragraph 74 as to CAM.  CAM is without

a basis to admit or deny the truth of the remaining allegations in Paragraph 74 and therefore

denies the allegations.

75.    Jarden has made a demand on CAM, Jackson and Yee for possession of the Missing Property, which demand has been acknowledged by Yee only.

**ANSWER**:    CAM denies the allegations in Paragraph 75 as to CAM.  CAM is without

a basis to admit or deny the truth of the remaining allegations in Paragraph 75 and therefore

denies the allegations.

76.    Exercise of control over the Missing Property by CAM, Jackson and Yee is inconsistent with Jarden's right to possession thereof.

**ANSWER**:    CAM denies the allegations in Paragraph 76 as to CAM.  CAM is without

a basis to admit or deny the truth of the remaining allegations in Paragraph 76 and therefore

denies the allegations.

77.    Deprivation of the Missing Property from Jarden by CAM, Jackson and Yee has caused Jarden to suffer harm by, among other things, impairing Jarden's efforts to operate the Lakewood business it acquired in connection with the Sale, and allowing CAM, Jackson and Yee to obtain a competitive advantage over Jarden.

**ANSWER**:    CAM denies the allegations in Paragraph 77 as to CAM.  CAM is without

a basis to admit or deny the truth of the remaining allegations in Paragraph 77 and therefore

denies the allegations.

78.    Deprivation of the Missing Property from Jarden by CAM, Jackson and Yee has been willful and in wanton disregard for Jarden's rights in the Missing Property.

**ANSWER**:    CAM denies the allegations in Paragraph 78 as to CAM.  CAM is without

a basis to admit or deny the truth of the remaining allegations in Paragraph 78 and therefore

denies the allegations.

## COUNT IV
### Infringement of U.S. Patent Number 5,829,956 in
### Violation of 35 U.S.C. § 273
### (CAM)

79.    Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:    CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

80.    As of at least as early as the Rejection Date, CAM no longer had a license from Plaintiff to manufacture any additional products or sell or offer for sale any such additional products under the '956 Patent.

**ANSWER**:    The statement Paragraph 80 of the Complaint sets forth legal conclusions and therefore do not require an answer.  To the extent that it alleges facts, CAM denies the allegations in Paragraph 80 of the Complaint.

81.    Upon information and belief, the Rejection Order further negates any claim of title CAM may have to any such fans which were made during or after February, 2009.  Even under the terms of the now rejected Supply Agreement, CAM could not acquire title to any fans made in February until 30 days following the end of the month.  As the Rejection Order rejected the Supply Agreement prior to the expiration of the 30 day period on March 27, 2009, CAM has no claim of title to the nearly 315,000 Lakewood Box Fans manufactured on or after February 1.

**ANSWER**:    The statements in Paragraph 81 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 81 of the Complaint.

82.    Upon information and belief, CAM has nonetheless continued to manufacture, sell and/or offer for sale at least these approximately 315,000 units, which manufacture, sale and/or offer for sale constitutes infringement of the '956 Patent, thereby causing irreparable harm and damage to Plaintiff, which damage should be trebled pursuant to 35 U.S.C. § 284.

**ANSWER**:    The statements in Paragraph 82 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 82 of the Complaint.

83.    Upon information and belief, since the Rejection Date, CAM has nonetheless continued to manufacture, sell and/or offer for sale at least approximately 108,000 units in accordance with the claims of the '956 Patent, which continued manufacture, sale and/or offer for sale since the Rejection Date likewise constitutes infringement of the '956 Patent, thereby irreparable harm and damage to Plaintiff, which damage should be trebled pursuant to 35 U.S.C. § 284.

**ANSWER**:    CAM admits that it manufactured approximately 108,000 box fans between April, 2009 and June, 2009.    The remaining statements in Paragraph 83 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the remaining allegations in Paragraph 83 of the Complaint.

84.    Upon information and belief, the acts of CAM alleged herein constitute infringement, directly and/or indirectly by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, of the '956 Patent by making, using, offering for sale, importing, and/or selling box fans having vane segments connecting adjacent fan blades which fall within the scope of at least one claim of the '956 Patent.

**ANSWER**:    The statements in Paragraph 84 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 84 of the Complaint.

85.    True and correct photographs depicting the device that CAM manufactured, used, sold and/or offer for sale are attached hereto as Exhibit G.

**ANSWER**:    CAM is without a basis to admit or deny the truth of the allegations in Paragraph 85 of the Complaint and therefore denies the allegations.

86.    By reason of CAM's infringement of the '956 Patent, Jarden has been and will continue to be seriously damaged and irreparably injured unless further infringement is enjoined and Plaintiffs are adequately compensated for such infringement by this Court pursuant to the provisions of 35 U.S.C. §§283,284 and/or 289.

**ANSWER**:    The statements in Paragraph 86 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 86 of the Complaint.

87.    Upon information and belief, CAM had actual knowledge of the '956 Patent prior to manufacturing, selling and/or offering for sale the infringing devices.  CAM deliberately,

knowingly and willfully infringed this Patent, thereby causing irreparable harm and damage to Plaintiffs, which damage should be trebled pursuant to 35 U.S.C. § 284.

**ANSWER**:   The statements in Paragraph 87 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 87 of the Complaint.

88.    The acts of CAM constitute willful infringement making this cause an exceptional case within the provisions of 35 U.S.C. § 285, thereby entitling Plaintiffs to recover attorneys' fees upon prevailing in this action.

**ANSWER**:   The statements in Paragraph 88 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 88 of the Complaint.

## COUNT V
### Infringement of U.S. Patent Number 6,763,564 in Violation of 35 U.S.C. § 273
### (CAM)

89.    Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:   CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

90.    As of at least as early as the Rejection Date, CAM no longer had a license from Lakewood to manufacture any additional products or sell or offer for sale any such additional products under the '564 Patent.

**ANSWER**:   The statements in Paragraph 90 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 90 of the Complaint.

91.    Upon information and belief, the Rejection Order further negates any claim of title CAM may have to any such fans which were made during or after February, 2009.  Even under the terms of the now rejected Supply Agreement, CAM could not acquire title to any fans made in February until 30 days following the end of the month.  As the Rejection Order rejected the Supply Agreement prior to the expiration of the 30 day period on March 27, 2009, CAM has no claim of title to the nearly 315,000 Lakewood Box Fans manufactured on or after February 1.

**ANSWER**:    The statements in Paragraph 91 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 91 of the Complaint.

92.    Upon information and belief, CAM has nonetheless continued to manufacture, sell and/or offer for sale at least these approximately 315,000 units, which manufacture, sale and/or offer for sale constitutes infringement of the '564 Patent, thereby causing irreparable harm and damage to Plaintiff, which damage should be trebled pursuant to 35 U.S.C. § 284.

**ANSWER**:    The statements in Paragraph 92 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 92 of the Complaint.

93.    Upon information and belief, since the Rejection Date, CAM has nonetheless continued to manufacture, sell and/or offer for sale at least approximately 108,000 units which were manufactured via a system and method in accordance with the claims of the '564 Patent, which continued manufacture, sale and/or offer for sale since the Rejection Date likewise constitutes infringement of the '564 Patent, thereby irreparable harm and damage to Plaintiff, which damage should be trebled pursuant to 35 U.S.C. § 284.

**ANSWER**:    CAM admits that it manufactured approximately 108,000 box fans between April, 2009 and June, 2009.  The remaining statements in Paragraph 93 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the remaining allegations in Paragraph 93 of the Complaint.

94.    Upon information and belief, the acts of CAM alleged herein constitute infringement, directly and/or indirectly by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, of the '564 Patent by making, using, offering for sale, importing, and/or selling box fans having vane segments connecting adjacent fan blades which fall within the scope of at least one claim of the '564 Patent.

**ANSWER**:    The statements in Paragraph 94 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 94 of the Complaint.

95.    True and correct photographs depicting the device that CAM manufactured, used, sold and/or offer for sale are attached hereto as Exhibit G.

**ANSWER**:   CAM is without a basis to admit or deny the truth of the allegations in Paragraph 95 of the Complaint and therefore denies the allegations.

96.   By reason of CAM's infringement of the '564 Patent, Plaintiffs have been and will continue to be seriously damaged and irreparably injured unless further infringement is enjoined and Plaintiffs are adequately compensated for such infringement by this Court pursuant to the provisions of 35 U.S.C. §§283,284 and/or 289.

**ANSWER**:   The statements in Paragraph 96 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 96 of the Complaint.

97.   Upon information and belief, CAM had actual knowledge of the '564 Patent prior to manufacturing, selling and/or offering for sale the infringing devices.  CAM deliberately, knowingly and willfully infringed this Patent, thereby causing irreparable harm and damage to Plaintiffs, which damage should be trebled pursuant to 35 U.S.C. § 284.

**ANSWER**:   The statements in Paragraph 97 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 97 of the Complaint.

98.   The acts of CAM constitute willful infringement making this cause an exceptional case within the provisions of 35 U.S.C. § 285, thereby entitling Plaintiffs to recover attorneys' fees upon prevailing in this action.

**ANSWER**:   The statements in Paragraph 98 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 98 of the Complaint.

## COUNT VI
## Infringement of U.S. Patent Number D441,443 in Violation of 35 U.S.C. § 273
## (CAM)

99.   Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:   CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

100.    As of at least as early as the Rejection Date, CAM no longer had a license from Lakewood to manufacture any additional products or sell or offer for sale any such additional products under the D'443 Patent.

**ANSWER**:   The statements in Paragraph 100 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 100 of the Complaint.

101.    Upon information and belief, the Rejection Order further negates any claim of title CAM may have to any such fans which were made during or after February, 2009.  Even under the terms of the now rejected Supply Agreement, CAM could not acquire title to any fans made in February until 30 days following the end of the month.  As the Rejection Order rejected the Supply Agreement prior to the expiration of the 30 day period on March 27, 2009, CAM has no claim of title to the nearly 315,000 Lakewood Box Fans manufactured on or after February 1.

**ANSWER**:   The statements in Paragraph 101 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 101 of the Complaint.

102.    Upon information and belief, CAM has nonetheless continued to manufacture, sell and/or offer for sale at least these approximately 315,000 units according to the ornamental design shown, described and claimed in the D'443 Patent, which accused infringing design embodied and infringes the patented invention of the D'443 Patent.  Thereby, CAM has caused and is causing irreparable harm and damage to Plaintiff, which damage should be trebled pursuant to 35 U.S.C. § 284.

**ANSWER**:   The statements in Paragraph 102 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 102 of the Complaint.

103.    Upon information and belief, since the Rejection Date, CAM has nonetheless continued to manufacture, sell and/or offer for sale at least approximately 108,000 units which were manufactured via a system and method in accordance with the claims of the D'443 Patent, which continued manufacture, sale and/or offer for sale since the Rejection Date likewise constitutes infringement of the D'443 Patents, thereby irreparable harm and damage to Plaintiff, which damage should be trebled pursuant to 35 U.S.C. § 284.

**ANSWER**:   CAM admits that it manufactured approximately 108,000 box fans between April, 2009 and June, 2009.  The remaining statements in Paragraph 103 of the

Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that

they allege facts, CAM denies the remaining allegations in Paragraph 103 of the Complaint.

104.    True and correct photographs depicting the device that CAM manufactured, used, sold and/or offer for sale are attached hereto as <u>Exhibit G</u>.

**ANSWER**:    CAM is without a basis to admit or deny the truth of the allegations in

Paragraph 104 of the Complaint and therefore denies the allegations.

105.    By reason of CAM's infringement of the D'443 Patent, Plaintiffs have been and will continue to be seriously damaged and irreparably injured unless further infringement is enjoined and Plaintiffs are adequately compensated for such infringement by this Court pursuant to the provisions of 35 U.S.C. §§283, 284 and/or 289.

**ANSWER**:    The statements in Paragraph 105 of the Complaint set forth legal

conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM

denies the allegations in Paragraph 105 of the Complaint.

106.    Upon information and belief, CAM had actual knowledge of the D'443 Patent prior to manufacturing, selling and/or offering for sale the infringing devices.  CAM deliberately, knowingly and willfully infringed this Patent, thereby causing irreparable harm and damage to Plaintiffs, which damage should be trebled pursuant to 35 U.S.C. § 284.

**ANSWER**:    The statements in Paragraph 106 of the Complaint set forth legal

conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM

denies the allegations in Paragraph 106 of the Complaint.

107.    The acts of Defendant constitute willful infringement making this cause an exceptional case within the provisions of 35 U.S.C. § 285, thereby entitling Plaintiffs to recover attorneys' fees upon prevailing in this action.

**ANSWER**:    The statements in Paragraph 107 of the Complaint set forth legal

conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM

denies the allegations in Paragraph 107 of the Complaint.

<u>**COUNT VII**</u>
**Infringement of Registered Trademark and Production of**
**Counterfeit Goods – Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)**
**(CAM)**

108.   Plaintiffs restate and realege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:   CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

109.   As of at least as early the Rejection Date, CAM no longer had a license from Lakewood to manufacture, advertise, market, distribute, sip, transport, sell and/or offer to sell any products bearing the Lakewood Marks throughout the United States.

**ANSWER**:   The statements in Paragraph 109 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 109 of the Complaint.

110.   Upon information and belief, since the Rejection Date, CAM has nonetheless continued to manufacture, sell and/or offer for sale at least approximately 108,000 units bearing the Lakewood Marks.

**ANSWER**:   CAM admits that it has retained rights under the Supply Agreement and that it continues to enforce and use such rights in accordance with the Supply Agreement.  CAM denies the remaining allegations in Paragraph 110 of the Complaint.

111.   The acts of CAM alleged herein constitute use in commerce, without the consent of Plaintiffs, of a reproduction, counterfeit, copy or colorable limitation of the Lakewood Marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe Plaintiffs' rights in the Lakewood Marks, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**ANSWER**:   The statements in Paragraph 111 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 111 of the Complaint.

112.   Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct.  As of the Rejection Date, Plaintiffs no longer had any ability to oversee the quality of any of the Lakewood Box Fans manufactured and/or sold by CAM which bear the Lakewood Marks under the Supply Agreement.  Plaintiffs similarly could no longer control any aspect of CAM's marketing, sale or shipment of such products bearing the Lakewood Marks, any promises made regarding such products, or any other of CAM's actions which could negatively affect Plaintiffs'

goodwill in and to the Lakewood Marks. Plaintiffs will continue to be irreparably harmed by CAM's actions absent injunctive relief and adequate compensation under 15 U.S.C. §§ 1116 and/or 1117.

**ANSWER**:   CAM denies the allegations in Paragraph 112 of the Complaint.

113.   Upon information and belief, CAM knew of the Plaintiffs' Lakewood Marks prior to undertaking the infringing activities set forth in this compliant and did so with intent to benefit from the goodwill and reputation of Plaintiffs and the Lakewood Marks.

**ANSWER**:   The statements in Paragraph 113 of the Complaint set forth legal conclusions and therefore do not require an answer. To the extent that they allege facts, CAM denies the allegations in Paragraph 113 of the Complaint.

114.   CAM's actions demonstrate an intentional, willful and malicious intent to trade upon the goodwill associated with the Lakewood Marks.

**ANSWER**:   The statements in Paragraph 114 of the Complaint set forth legal conclusions and therefore do not require an answer. To the extent that they allege facts, CAM denies the allegations in Paragraph 114 of the Complaint.

115.   Jarden has no adequate remedy at law for the foregoing conduct, and has been, and absent injunctive relief will continue to be, irreparably harmed by CAM's actions.

**ANSWER**:   The statements in Paragraph 115 of the Complaint set forth legal conclusions and therefore do not require an answer. To the extent that they allege facts, CAM denies the allegations in Paragraph 115 of the Complaint.

## COUNT VIII
### Federal Unfair Competition in Violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125 (CAM)

116.   Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:   CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

117.   CAM's advertising , marketing, offering for sale and sale of goods with false designations and representations identical to the Lakewood Marks is likely to cause confusion, or

to cause mistake, or to deceive or association between CAM on one hand and Plaintiffs and its authentic goods and services on the other hand.  Such actions by CAM are also likely to cause confusion, or to cause mistake, or to deceive purchasers and potential purchasers and members of the public as to the origin, sponsorship, authorization or approval of CAM's goods by Plaintiffs.

**ANSWER**:   The statements in Paragraph 117 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 117 of the Complaint.

118.   CAM's continued production, sale and/or attempted sale of products bearing the Lakewood Marks even after entry of the Rejection Order demonstrate an intentional, willful and malicious intent to trade upon the goodwill associated with the Lakewood Marks.

**ANSWER**:   The statements in Paragraph 118 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 118 of the Complaint.

119.   Plaintiffs are being damaged and will continue to be damaged by CAM's false designations and representations because they are likely to cause confusion among the purchasing public and the trade as to the true affiliation, connection, association, origin, sponsorship or approval of CAM's goods.   Because of CAM's false designations and representations, Plaintiffs suffered and will suffer damage to their business reputations and goodwill, and the loss of sales and profits that Plaintiffs would have made but for CAM's acts. CAM's false and deceptive designations and representations, violate Section 43(a) of the Lanham Act, 15. U.S.C. § 1125(a), and Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct.

**ANSWER**:   The statements in Paragraph 119 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 119 of the Complaint.

## COUNT IX
### Unfair Competition and Trademark Infringement in Violation of
### the Common Law of Illinois
### (CAM)

120.   Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:    CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

121.    The acts of CAM alleged herein constitute use in commerce, without the consent of Plaintiffs, of a reproduction, counterfeit, copy or colorable imitation of the Lakewood Marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe Plaintiffs' rights in the Lakewood Marks, in violation of the common law of the State of Illinois.

**ANSWER**:    The statements in Paragraph 121 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 121 of the Complaint.

122.    Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct. Plaintiffs will continue to be irreparably harmed by CAM's actions absent injunctive relief and adequate compensation.

**ANSWER**:    The statements in Paragraph 122 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 122 of the Complaint.

## COUNT X
**Unfair Competition and Trademark Infringement in Violation of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505
(CAM)**

123.    Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:    CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

124.    The acts of CAM alleged herein constitute use in commerce, without the consent of Plaintiffs, of a reproduction, counterfeit, copy or colorable imitation of the Lakewood Marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe Plaintiffs' rights in the Lakewood Marks, in violation of 815 ILCS 505/2.

**ANSWER**:   The statements in Paragraph 124 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 124 of the Complaint.

## COUNT XI
**Unfair Competition and Trademark Infringement in Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*
(CAM)**

125.    Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:   CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

126.    CAM's conduct, as alleged above, constitutes use in commerce, without the consent of Plaintiffs, of a reproduction, counterfeit, copy or colorable imitation of the Lakewood Marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe Plaintiffs' rights in the Lakewood Marks, in violation of 815 ILCS 505/2.

**ANSWER**:   The statements in Paragraph 126 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 126 of the Complaint.

## COUNT XII
**Unjust Enrichment.
(CAM)**

127.    Except to the extent that any of the preceding allegations establish an enforceable contract between Lakewood and CAM, all of the allegations set forth in each of the preceding paragraphs are restated and realleged as if fully set forth herein.

**ANSWER**:   CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

128.    The Supply Agreement fails to state the price at which Lakewood was to purchase the Lakewood Box Fans from CAM.

**ANSWER**:   CAM denies the allegations in Paragraph 128 of the Complaint.

129.  Because of the omission of any price terms from the Supply Agreement, this Court cannot ascertain what the parties have agreed to and the Supply Agreement is unenforceable.

**ANSWER**:  The statement in Paragraph 129 of the Complaint sets forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 129 of the Complaint.

130.  CAM has been unjustly enriched by the motors and cord sets that Lakewood supplied to CAM, and CAM's use of the Lakewood Marks.

**ANSWER**:  CAM denies the allegations in Paragraph 130 of the Complaint.

131.  Allowing CAM to retain the benefits of the motors and cord sets that Lakewood supplied to CAM, and CAM's use of the Lakewood Marks would violate the fundamental principles of justice, equity and good conscience.

**ANSWER**:  The statements in Paragraph 131 of the Complaint set forth legal conclusions and therefore do not require an answer.  To the extent that they allege facts, CAM denies the allegations in Paragraph 131 of the Complaint.

<u>**COUNT XIII**</u>
**Tortious Interference with A Contract.**
**(CAM)**

132.  Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:  CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

133.  Upon information and belief, CAM knew of the contractual employment relationships between Jackson and Lakewood and Yee and Lakewood.

**ANSWER**:  CAM admits that it was aware that Jackson and Yee had each been employed by Lakewood prior to joining CAM.  CAM denies the remaining allegations in Paragraph 133 of the Complaint.

134.  Upon information and belief, CAM intentionally, willfully and wrongfully encouraged Jackson and Yee to violate certain contracts, agreements and fiduciary

responsibilities with and owed to Lakewood so that CAM could unfairly compete with Lakewood and be unjustly rewarded thereby, which could not have been successfully accomplished without the unlawful taking and conversion of Lakewood's packaging and product images, product drawings and customer lists.

**ANSWER**:    CAM denies the allegations in Paragraph 134 of the Complaint.

135.    Upon information and belief, the volume of hard files which were removed unnoticed by Jackson and Yee would have required months of concerted action, dating back to negotiations between CAM and Lakewood regarding CAM's proposed purchase of Lakewood in December, 2008.

**ANSWER**:    CAM denies the allegations in Paragraph 135 of the Complaint.

136.    Upon information and belief, CAM broke off such negotiations with Lakewood once Jackson and Yee had agreed to misappropriate the Missing Property for CAM.

**ANSWER**:    CAM denies the allegations in Paragraph 136 of the Complaint.

137.    CAM's conduct in inducing Yee and Jackson to misappropriate Lakewood computers, electronic files, hard files, drawings, images, and other documents was calculated to cause damage and loss to Lakewood's lawful business and was intentionally committed by Cam with the unlawful purpose of causing damage without justifiable cause or right.

**ANSWER**:    CAM denies the allegations in Paragraph 137 of the Complaint.

138.    As a result of CAM's unjustified interference with Lakewood's employee relationships, Plaintiffs have suffered and will continue to suffer economic loss, including lost sales and lost profits, as well as other damages.

**ANSWER**:    CAM denies the allegations in Paragraph 138 of the Complaint.

## COUNT XIV
**Unauthorized Access of a Protected Computer Causing Damage in Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030
(CAM, Yee, Jackson)**

139.    Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:    CAM restates its answers to all of the preceding paragraphs of the

Complaint as though fully set forth herein.

140.    Upon information and belief, CAM has used Lakewood's computers, electronic files, hard files, drawings, images, and other documents misappropriated by Yee and Jackson to sell products directly to Plaintiffs customers.

**ANSWER**:    CAM denies the allegations in Paragraph 140 of the Complaint.

141.    Upon information and belief, in engaging in the conduct described above, CAM has conspired and agreed with Yee and Jackson that Yee and Jackson would and did knowingly, purposefully and without authorization or in excess of their authorization (i) transmit a "program, information, code, or command" to their Lakewood-owned computers, and (ii) access their Lakewood-owned computers and Lakewood's computer system, both for the purpose of causing damage to Lakewood, and such transmission did cause damage to Lakewood in violation of 18 U.S.C. § 1030.

**ANSWER**:    CAM denies the allegations in Paragraph 141 of the Complaint.

**COUNT XV**
**Civil Conspiracy**
**(CAM, Yee, Jackson)**

142.    Plaintiffs restate and reallege all of the preceding paragraphs as though fully set forth herein.

**ANSWER**:    CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

143.    Upon information and belief, CAM and Yee and Jackson conspired with and had a meeting of the minds with the others to commit the actions described above.  CAM engaged in its conspiracy for the purpose of exploiting its employees' former positions of trust and confidence with Lakewood in order to advance its own competitive business interests to the detriment of Lakewood, for example in order to divert business and relationships away from Lakewood to itself.   Defendants committed numerous overt acts in furtherance of their conspiracy as described above, including, without limitation, improperly using Lakewood's computers, electronic files, hard files and confidential data and valuable confidential information regarding product drawings, images, packaging, customer information and other documents misappropriated by Yee and Jackson to sell products directly to Plaintiffs' customers to sabotage Lakewood's business and relationships and divert Lakewood's business and relationships to themselves, thereby damaging Plaintiffs.

**ANSWER**:    CAM denies the allegations in Paragraph 143 of the Complaint.

**COUNT XVI**
**Claim Objection – 11 U.S.C. § 502**
**(CAM)**

144.    All of the preceding paragraphs are restated and realleged as though fully set forth herein.

**ANSWER**:    CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

145.    The CAM Claim is predicated on the enforceability of the Supply Agreement.

**ANSWER**:    CAM admits that it has a claim against the Lakewood estate that arises from the Supply Agreement.  CAM further answers that CAM holds a tool and die lien pursuant to the Illinois Tool and Die Lien Act, 770 ILL. COMP. STAT. 105/1, and a common law artisan lien for costs related to repairs and improvements to the Equipment.  CAM denies the remaining allegations in Paragraph 145 of the Complaint.

146.    To the extent that this Court determines that the Supply Agreement is void *ab initio*, CAM is not entitled to the enforcement thereof, including the allowance of the CAM Claim.

**ANSWER**:    CAM denies the allegations in Paragraph 146 of the Complaint.

147.    In addition, the Trustee disputes CAM's claim for lost profits, and the losses alleged in the CAM claim.

**ANSWER**:    Paragraph 147 of the Complaint is a statement of the Trustee position and therefore does not require a response.  To the extent that Paragraph 147 alleges facts, CAM denies those allegations.

148.    The Trustee disputes that the CAM Claim is secured by either a valid lien under the Illinois Tool and Die Lien Act or a valid common law artisan lien.

**ANSWER**:    Paragraph 148 of the Complaint is a statement of the Trustee position and therefore does not require a response.  To the extent that Paragraph 148 alleges facts, CAM denies those allegations.

149.    The Trustee disputes that CAM is entitled to any rights of setoff or recoupment against the Estate.

**ANSWER**:   Paragraph 149 of the Complaint is a statement of the Trustee position and therefore does not require a response.   To the extent that Paragraph 149 alleges facts, CAM denies those allegations.

## COUNT XVII
### Equitable Subordination – 11 U.S.C. § 510(c)
### (CAM)

150.   All of the allegations set forth in each of the preceding paragraphs are restated and realleged as if fully set forth herein.

**ANSWER**:   CAM restates its answers to all of the preceding paragraphs of the Complaint as though fully set forth herein.

151.   CAM engaged in inequitable conduct in connection with the conversion, trademark infringement and unfair competition described herein.

**ANSWER**:   CAM denies the allegations in Paragraph 151 of the Complaint.

152.   CAM's inequitable conduct has injured Lakewood's creditors, and relates directly to CAM's claims against the Estate and the distribution of the proceeds of Lakewood's assets amongst its creditors.

**ANSWER**:   CAM denies the allegations in Paragraph 152 of the Complaint.

153.   Equitable subordination of CAM's claims is consistent with the provisions and underlying policies of the Bankruptcy Code.

**ANSWER**:   Paragraph 153 of the Complaint sets forth a legal conclusion to which no response is required.   To the extent that Paragraph 153 alleges facts, CAM denies those allegations.

## AFFIRMATIVE DEFENSES

CAM reserves the right to assert all applicable defenses and counterclaims to the claims asserted by Plaintiffs in the Complaint.   Without limiting the generality of the foregoing, and without regard to whether the defenses set forth below are affirmative defenses within the meaning of Federal Rule of Civil Procedure 8(c), as made applicable to this adversary

proceeding by Federal Rule of Bankruptcy Procedure 7008, and without conceding that such defenses must be set forth in this Answer to the Complaint, CAM states as follows:

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs fail to state a claim against CAM on which relief may be granted pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure.

### SECOND AFFIRMATIVE DEFENSE

CAM holds a tool and die lien pursuant to the Illinois Tool and Die Lien Act, 770 ILL. COMP. STAT. 105/1, and a common law artisan lien for costs related to repairs and improvements to the Equipment.  *See Affiliated Bank v. Evans Tool & Mfg. Co., Inc.*, 593 N.E.2d 145 (Ill. App. 1992); *Nat'l Bank of Joliet v. Beregson Cadillac, Inc.*, 361 N.E.2d 1116 (Ill. 1977).

### THIRD AFFIRMATIVE DEFENSE

CAM has tendered the Equipment to Jarden, the successful bidder of the Equipment pursuant to the Sale Order, and, with the exception of certain Equipment already delivered to Jarden, CAM currently holds such Equipment with the consent of Jarden, subject to reasonable storage fees.

### FOURTH AFFIRMATIVE DEFENSE

The Court lacks jurisdiction over CAM with respect to Counts IV-XV, which are asserted by Jarden.

### FIFTH AFFIRMATIVE DEFENSE

CAM does not infringe and has not infringed (not directly, contributorily, or by inducement) any claim of the '956 Patent.

### SIXTH AFFIRMATIVE DEFENSE

CAM does not infringe and has not infringed (not directly, contributorily, or by inducement) any claim of the '564 Patent.

## SEVENTH AFFIRMATIVE DEFENSE

CAM does not infringe and has not infringed (not directly, contributorily, or by inducement) any claim of the D'443 Patent.

## EIGHTH AFFIRMATIVE DEFENSE

Upon information and belief, certain or all of the Patents are invalid or unenforceable for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 101, 102, 103, and 112.

## NINTH AFFIRMATIVE DEFENSE

Upon information and belief, to the extent Plaintiffs may be entitled to damages, any claim by Plaintiffs for damages for patent infringement is limited by 35 U.S.C. § 287.

## TENTH AFFIRMATIVE DEFENSE

In the event that Plaintiffs can satisfy the elements of a patent infringement claim against CAM, and CAM is found to have infringed one or more of the Patents, such infringement was not willful.

## ELEVENTH AFFIRMATIVE DEFENSE

Upon information and belief, CAM had an implied license to use the Patents.

## TWELFTH AFFIRMATIVE DEFENSE

Lakewood granted CAM an express license to manufacture, market, and sell 20" box fans bearing the Lakewood marks, in Lakewood's packaging, and under Lakewood's name.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to injunctive relief as they, at a minimum, have not suffered any alleged irreparable injury and have an adequate remedy at law.

## FOURTEENTH AFFIRMATIVE DEFENSE

Upon information and belief, Plaintiffs lack standing to sue for patent infringement of certain or all of the Patents.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are unenforceable, in whole or part, by the doctrines of waiver and/or

estoppel.

Respectfully submitted,

Chicago American Manufacturing, LLC,

Dated: August 19, 2009                By:   */s/ Janice A. Alwin*
                                         One of its attorneys

William J. Barrett
Janice A. Alwin
BARACK FERRAZZANO
KIRSCHBAUM & NAGELBERG LLP
200 West Madison Street
Suite 3900
Chicago, Illinois 60606
(312) 984-3100 (Telephone)
(312) 984-3150 (Fax)
Janice.alwin@bfkn.com

## CERTIFICATE OF SERVICE

Janice A. Alwin certifies that service of the above and foregoing was accomplished
(i) through Electronic Notice for Registrants on the following CM/ECF service list, and (ii) by
U.S. Mail, postage prepaid, on the following Mail service list on this 19th day of August,
2009.

*/s/ Janice A. Alwin*
Janice A. Alwin

### CM/ECF Service List

- Erin M Casey    erin.casey@goldbergkohn.com
- Scott R Clar    sclar@craneheyman.com,
  mjoberhausen@craneheyman.com;asimon@craneheyman.com
- Joseph D Frank    jfrank@fgllp.com,
  ccarpenter@fgllp.com;rheiligman@fgllp.com;knewman@menterlaw.com;jkleinman@fgllp.com
- Adam B Goodman    adam@thegoodmanlawoffices.com
- Micah R Krohn    mkrohn@fgllp.com, ccarpenter@fgllp.com;rheiligman@fgllp.com
- Jessica Tovrov    jessica@tovrovlaw.com

### Mail Service List

**Counsel to the Trustee**

Scott R. Clar
Crane Heyman Simon Welch & Clar
135 S LaSalle Street, Suite 3705
Chicago, IL 60603

**Chapter 7 Trustee**

Gregg Szilagyi
Tailwind Services LLC
1 South Wacker Drive, Suite 800
Chicago, Illinois 60606

**Counsel to Sunbeam Products, Inc. d/b/a Jarden Consumer Solutions**

Joseph D. Frank
Micah R. Krohn
Frank/Gecker LLP
325 N LaSalle St, Suite 625
Chicago, IL 60654

**Counsel to Sunbeam Products, Inc. d/b/a Jarden Consumer Solutions**

Samuel Digiorlamo
Husch Blackwell Sanders LLP
The Plaza in Clayton Office Tower
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

**Counsel to Scott Jackson**

William J. Factor
The Law Offices of William J. Factor, Ltd.
1363 Shermer Road, Suite 224
Northbrook, IL  60062

**Counsel to Chungkin Yee:**

Adam Goodman, Goodman Law Offices LLC
Jessica Tovrov, Tovrov Law Offices, LLC
105 West Madison St, Suite 400
Chicago, IL 60602